**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Party Book Hill Park, LLC et al, | |
| Plaintiff, | **Civil. No. 18-1179 (GMM)** |
| v. | |
| Travelers Property Casualty Company, | |
| Defendant. | |

## OPINION AND ORDER

Defendant Travelers Property Casualty Company of America ("Defendant" or "Travelers") filed *Travelers Property Casualty Company of America's Motion In Limine to Exclude Opinions of Robert Carter and Request for an Evidentiary Hearing* ("Motion to Exclude Expert Carter") at Docket No. 195 to exclude the expert testimony of Plaintiff Book Hill Park, LLC's ("Book Hill") damages expert Robert Carter ("Mr. Carter"). Defendant also filed *Travelers Motion In Limine to Exclude Opinions of Damon Hostetter* ("Motion to Exclude Expert Hostetter") at Docket No. 225 to exclude the expert testimony of Book Hill's marine insurance underwriting expert, Damon Hostetter ("Mr. Hostetter") (Docket No. 225).

## I.   BACKGROUND

This case arises from an insurance coverage dispute over the sinking of the LONE STAR, a former pipe barge owned by Marine Environmental Remediation Group, LLC (a subsidiary owned by MER

2
Civil. No. 18-1179 (GMM)

Group Puerto Rico, LLC (collectively "MER")). The insurer, Travelers Property Casualty Company of America ("Travelers" or "Defendant") denied MER coverage for the incident based on the parties' Protection and Indemnity Insurance Policy ("P&I Policy"). On March 1, 2022, Book Hill purchased MER's claims against Defendant after MER went bankrupt and, thereafter, became the plaintiff in this case. (Docket 49-1 at 2).

As per the *Case Management Order* issued on July 3, 2018, at Docket No. 24, and amended on June 30, 2022, and September 21, 2022, at Docket Nos. 73 and 85, respectively, the Court ordered that "Expert Discovery shall conclude on November 16, 2022." (Docket No. 113). The parties exchanged preliminary expert designations and reports on October 31, 2022, and Book Hill later filed supplementary expert designations and an updated report for Mr. Carter on November 10, 2022. *See* (Docket No. 196-1). Plaintiff designated Robert Carter as an expert in forensic accounting, business valuation, and business lost profits. *See* (id.). It also designated Damon Hostetter as its expert in marine insurance contract underwriting. *See* (id.).

The parties completed, and the Court has ruled on, summary judgement motions in this case. *See* (Docket No. 162). In its Opinion and Order, the Court denied summary judgment to both parties and articulated that it is for the jury to determine whether Defendant had the requisite motive and intent to

3
**Civil. No. 18-1179 (GMM)**

substantiate Plaintiffs dolo claim under P.R. Laws Ann. Tit. 31, § 3018. As such, the Court will not consider dispositive arguments on the availability of specific claims for damages as a matter of law while addressing parties' evidentiary motions.

The issues before the Court now arise from pre-trial evidentiary motions. Defendant filed a series of motions *in limine* for this Court to address. *See* (Docket Nos. 195[1], 197[2], 201[3], 203[4], 205[5], 207[6], 209[7], 211[8], 225[9], 227[10], 229[11], 231[12]). Plaintiff filed its omnibus opposition to Defendant's motions at Docket No. 244.[13] Defendant thereafter filed an omnibus reply at Docket No. 253.[14] Here, the Court addresses the Motion to Exclude Expert Carter and Motion to Exclude Expert Hostetter, which place at issue the

---

[1] *Travelers Property Casualty Company of America's Motion In Limine To Exclude Opinions Of Robert William Carter.*
[2] *Travelers Property Casualty Company of America's Motion In Limine To Exclude Untimely And Unidentified Documents From Trial.*
[3] *Travelers' Motion In Limine to Exclude Evidence of or Relating to Book Hill's Alleged Damage Item Described as "Security For Resolve".*
[4] *Travelers' Motion In Limine to Exclude Evidence of or Relating to Book Hill's Alleged Damage Item Described as "7P Mortgage Interest".*
[5] *Travelers' Motion In Limine to Exclude Evidence of or Relating to Book Hill's Alleged Damage Item Described as "Initial Wreck Removal".*
[6] *Travelers' Motion In Limine to Exclude Evidence of or Relating to Book Hill's Alleged Damage Item Described as "Atlantic Marine Association".*
[7] *Travelers' Motion In Limine to Exclude Evidence of or Relating to Book Hill's Alleged Damage Item Described as "Resolve".*
[8] Travelers' Motion In Limine to Exclude Evidence of or Relating to Book Hill's Alleged Damage Item Described as "MER Assistance To Resolve".
[9] *Travelers' Motion In Limine to Exclude Evidence of or Relating to Book Hill's Alleged Damage Items Described as "Attorney's Fees".*
[10] *Travelers' Motion In Limine to Exclude Evidence of or Relating to Book Hill's Alleged Damage Item Described as "Lost Profits".*
[11] *Travelers' Motion In Limine to Exclude the Opinions of Damon Hostetter.*
[12] *Travelers' Motion In Limine to Exclude the Opinions of Kevin Highfield.*
[13] *Plaintiff's Omnibus Opposition to Defendant's Motions In Limine.* ("Omnibus Opposition").
[14] *Travelers Property Casualty Company Of America's Reply to Book Hill's Omnibus Opposition to Travelers' Motions In Limine.* ("Omnibus Reply").

4
`Civil. No. 18-1179 (GMM)`

admissibility of testimony from Book Hill's identified damages and marine insurance experts at Docket Nos. 195 and 225, respectively.

A.    <u>The Motion to Exclude Expert Carter</u>

In the Motion to Exclude Expert Carter and its accompanying *Memorandum*[15] ("Memorandum in Support of Motion to Exclude Expert Carter"), Travelers asserts that Mr. Carter's opinions are not within the scope of his expertise, do not rest on a reliable foundation, and are not relevant to the task at hand. *See* (Docket Nos. 195; 196). Travelers maintains that Fed. R. Evid. 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) and its progeny <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137 (1999), substantiate its claims for exclusion. Plaintiff argues to the contrary, that Mr. Carter's expertise in the field and opinions based on reliable evidence will be helpful and to the jury as the trier of fact in making its damages determination. *See* (Docket No. 244 at 11-21). The issue before the Court is, thus, whether Mr. Carter's testimony rested on reliable foundation, such that would assist the trier of fact in better understanding Book Hill's claims for damages as required by Fed. R. Evid. 702.

---

[15] *Travelers Property Casualty Company of America's Memorandum in Support of Motion In Limine To Exclude Opinions Of Robert William Carter.*

5
**Civil. No. 18-1179 (GMM)**

B.    <u>The Motion to Exclude Expert Hostetter</u>

In the Motion to Exclude Expert Hostetter and its accompanying *Memorandum*[16] ("Memorandum in Support of Motion to Exclude Expert Hostetter"), Travelers argues that Mr. Hostetter "is expected to offer various opinions on purely legal issues and other opinions for which he offers no factual support or basis and for which he is not qualified." (Docket No. 226 at 1). Travelers points to nine (9) separate statements in Mr. Hostetter's expert report that it purports are impermissible legal conclusions that would not assist the trier of fact and would impinge on the role of the judge. *See* (Docket No. 226 at 4-5). Travelers further argues that two (2) statements included in Mr. Hostetter's report were provided with "no basis or reason aside from the fact that he does not agree with Travelers' Expert[.]" (<u>Id.</u> at 6). Travelers also argues for exclusion based on "gamesmanship" performed by Book Hill during the discovery stage, (<u>id.</u> at 7-8), and contests Mr. Hostetter's qualifications to serve as an expert in commercial marine underwriting and claims. *See* (<u>id.</u> at 1, 2); (Docket No. 253 at 28-29). Plaintiff argues to the contrary on each issue including that Mr. Hostetter is a qualified expert, his testimony will aid the jury, and his opinions are properly founded and not purely stating legal conclusions. *See* (Docket No. 244 at 49-61).

---

[16] *Travelers' Memorandum in Support of Motion In Limine to Exclude the Opinions of Damon Hostetter.*

6
**Civil. No. 18-1179 (GMM)**

## II.  <u>APPLICABLE LAW</u>

A. <u>Federal Rule of Evidence 702</u>

Fed. R. Evid. 702 controls the admissibility of expert witness testimony. *See* <u>Crow v. Marchand</u>, 506 F.3d 13, 17 (1st Cir. 2007) ("The touchstone for the admission of expert testimony in federal court litigation is Federal Rule of Evidence 702."). The Rule dictates:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Thus, Fed. R. Evid. 702 assigns a "gatekeeping role for the judge" to ensure that the expert is "sufficiently qualified to assist the trier of fact" and "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." <u>Daubert</u>, 509 U.S. at 597. A trial court "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." <u>Kumho Tire Co.</u>, 526 U.S. at 152. To aid trial judges in their role as gatekeepers, the <u>Daubert</u> Court set forth several

7
`Civil. No. 18-1179 (GMM)`

factors that may be taken into consideration, none of which are determinative: (i) whether a theory or technique can and has been tested; (ii) whether the theory or technique has been subjected to peer review and publication; (iii) whether the particular scientific technique has a known or potential rate of error; and (iv) the "general acceptance" of a theory or technique. See Daubert, 509 U.S. at 593-94.

Therefore, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

To demonstrate that an expert's evidence rests of reliable foundation the district court considers whether "the testimony is based on sufficient facts or data"; whether "the testimony is the product of reliable principles and methods"; and whether "the expert has reliably applied the principles and methods to the facts of the case." Smith v. Jenkins, 732 F.3d 51 (1st Cir. 2013) (*citing* Fed. R. Evid. 702).Where, as here, the factual basis of an expert's testimony is called into question, the district court must determine whether the testimony has "a reliable basis" in light of the knowledge and experience of the relevant discipline. *See* Kumho Tire Co., 526 U.S. at 148.

8
Civil. No. 18-1179 (GMM)

Note, however, the difference between "unreliable" support and "insufficient" support for an expert witness' conclusion. *See* Martínez v. United States, 33 F.4th 20, 24 (1st Cir. 2022) (*quoting* Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 22 (1st Cir. 2011)). Whether the underpinning of an expert's opinion is insufficient is "a matter affecting the weight and credibility of the testimony – a question to be resolved by the jury." Id. (*quoting* Milward, 639 F.3d at 22). Conversely, "trial judges may evaluate data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable." Milward, 639 F.3d at 15 (*quoting* Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998)).

To that extent, "[t]he proponent of expert testimony has the burden to show by a preponderance of the evidence it is reliable, not that it is correct." Robertson v. Iberia Comprehensive Community Health Center, Inc., Case No. 6:17-CV-01663, 2022 WL 4479204, at *2 (W.D. La. Sept. 26, 2022) (*citing* Johnson v. Arkema, Inc., 685 F.3d 452, 459 (5th Cir. 2012)). As such, "Rule 702 has been interpreted liberally in favor of the admission of expert testimony." Martínez, 33 F4th at 24 (*quoting* Levin v. Dalva Bros., Inc., 459 F.3d 68, 78 (1st Cir. 2006)).

To ensure reliability and intellectual rigor, experts "must be able to produce a written report or testimony supported by an

9
`Civil. No. 18-1179 (GMM)`

accepted methodology that is based on substantial scientific, technical, or other specialized knowledge." <u>Figueroa v. Simplicity Plan de Puerto Rico</u>, 267 F.Supp.2d 161, 164 (D.P.R. 2003). "Failure to provide a testimony or a report detailing the basis for the expert's opinion in a comprehensive scientific manner can cause the expert witness and his report to be eliminated from trial." <u>Id.</u> (*citing* Justo Arenas & Carol M. Romey, *Professional Judgment Standard and Losing Games for Psychology, Experts and the Courts*, 68 Rev. Jur. U.P.R. 159, 180 (1999)).

B. <u>Federal Rule of Civil Procedure 26</u>

Fed. R. Civ. P. 26 requires from a party that intends to use a Fed. R. Evid. 702 witness at trial, to submit a written report. *See* Fed. R. Civ. P. 26(a)(2). The written report required by Fed. R. Civ. P. 26 must contain: a complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; any exhibits that will be used to summarize or support them; the witness's qualifications, including a list of all publications authored in the previous 10 years; a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and a statement of the compensation to be paid for the study and testimony in the case. *See* Fed. R. Civ. P. 26(a)(2)(B)(i), (ii), and (vi).

10
**Civil. No. 18-1179 (GMM)**

Further, Rule 26(e)(2) requires parties to timely supplement expert witness testimony if any changes to the expert's opinion arise:

> For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e)(2). Pursuant to Rule 26, a timely disclosure is one that is made at "the times and in the sequence that the court orders." Fed. R. Civ. P. 26 (a)(2)(D).

C. Fed R. Civ. P. 37

Fed. R. Civ. P. 37 provides "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*." (Emphasis added).

### III. ANALYSIS AND CONCLUSION OF THE DAUBERT CLAIM

A. Motion to Exclude Expert Carter

In the Memorandum in Support of the Motion to Exclude Expert Carter, Travelers asks the Court to "preclude from the trial in this case. . .purported expert witness Robert Carter, and to exclude from evidence and argument any reference to this witness and/or his proposed opinions, testimony, and report." (Docket No.

`Civil. No. 18-1179 (GMM)`

196 at 1). Travelers claims that Mr. Carter's expert opinions are largely outside the scope of his expertise, rest on unreliable foundations, and would not be helpful to the trier of fact.

1. <u>Qualifications</u>

Book Hill retained Mr. Carter "to calculate damages, if any, in the form of reimbursement of expenses incurred and lost profits, if there is a finding of liability in this matter." (Docket No. 196-2 at 13). Despite acknowledging that Mr. Carter is qualified to testify as an expert based on his experience and training in forensic accounting and business valuation, Travelers argues that many of Mr. Carter's preferred opinions fall "outside the scope of his expertise." *See* (Docket 196 at 7-9). Specifically, Travelers cites Mr. Carter's lack of expertise in the insurance industry, private security, and salvage operations as reason to exclude his opinions related to potential damages based on to MER's alleged expenses. *See* (<u>id.</u>). Book Hill responds by pointing out that Mr. Carter has not been asked to offer expert opinion on these topics, but to analyze expenses in these areas and opine of whether those damages would be reimbursable based on Traveler's denial of MER's coverage claim for wreck removal. *See* (Docket No. 244 at 12-16). The Court agrees that Mr. Carter does not require specific industry experience to apply his "over 15 years of experience in disputes, business valuation, consulting, expert witness services, forensic accounting and fraud investigation services across numerous

12
**Civil. No. 18-1179 (GMM)**

industries" to analyze the damages potentially available to Book Hill in this case. (Docket No. 196-2 at 22). Plainly, Mr. Carter is qualified to analyze and opine whether the damages would be reimbursable.

## 2. Reliable Foundation

Travelers argues that Daubert requires exclusion of Mr. Carter's opinions because his "so-called opinions are based on pure conjecture, speculation, and assumptions derived from an insufficient evidentiary foundation." (Docket No. 296 at 9). To support this argument, Travelers directs the Court to an exhibit containing choice excerpts from Mr. Carter's deposition. See (Docket No. 296 at 9; 296-3). The excerpts aim to demonstrate Mr. Carter's reliance on the assumptions provided directly from the Plaintiff on which he was asked to base his analysis and opinions. Thus, for both his lost profits analysis and his conclusion on other damages items related to wreck removal for the LONE STAR, the Court must evaluate whether the deposition excerpts demonstrate that Mr. Carter's opinions are based on insufficient facts or data and unreliable methodology.

### i.  Lost profits

Mr. Carter's report includes an analysis of MER's lost profits stemming from Travelers' denial of its wreck removal claim. In conducting this analysis, Mr. Carter calculated the revenue that MER would have earned if they would have conducted the full

scrapping of the SEVEN POLARIS, MSS2, and BALDER vessels. See (Docket No. 296-2 at 15). The excerpts Travelers provides in Exhibit 3 to the Motion to Exclude Expert Carter demonstrate that Mr. Carter applied the following assumptions to its lost profit analysis: that MER would have regained the capacity to continue its ship scrapping operation, *see* (Docket No. 196-3 at 2, 14); that MER's estimates of salvageable material per vessel scrapped was reasonable and accurate, *see* (Docket No. 196-3 at 5); the MER's valuation of the SEVEN POLARIS vessel at $5 million was reasonable, *see* (Docket No. 196-3 at 11); that MER would have contracted with a company called Hareema for the scrapping of the BALDER were it not for the bankruptcy action, see (Docket No. 196-3 at 12-13); and that the company financial statements prepared by MER's accountant were a reliable source of costs for Mr. Carter's "contribution margin analysis," *see* (Docket No. 196-3 at 15-16).

The testimony excerpted by Travelers also includes mention of some of the data or documents, other than statements from MER executives, that Mr. Carter considered when conducting his analysis, namely, company financial statements prepared by an accountant, spreadsheets of costs prepared by MER executives, the company's profit models, and contracts for the scrapping of other vessels. *See* (Docket No 296-3). Book Hill contends that Mr. Carter's deposition and report reveal that the expert considered sufficiently reliable data to form his opinions including

14
Civil. No. 18-1179 (GMM)

Plaintiffs statements of uncontested facts, conversations with MER officials, and a review of over 200 documents including "financial models and financial information, some supporting in terms of prices for the scrap and metal being sold." (Docket No. 244-2 at 7). Moreover, the list of documents considered by Mr. Carter in drafting his report appear to include documents related to the vessels that MER would have allegedly profited from had they continued to conduct shipbreaking business. *See* (Docket No. 196-2 at 29-33).

Although the deposition excerpts demonstrate that Mr. Carter's lost profit analysis is based in part on assumptions regarding MER's ability to perform scrapping operations and the reasonableness of various financial projections, other factual bases exist for his analysis of MER's lost profits. Travelers has not provided sufficient evidence to demonstrate that Mr. Carter's lost profit analysis is based on nothing more that MER and Book Hill's spoon-fed conclusions, as it claims in the Motion to Exclude Expert Carter.

Beyond the sufficiency of the facts underpinning Mr. Carter's expert report, Travelers alleges that his opinions are also inadmissible for lack of reliable principles and methods. In fact, Travelers claims Mr. Carter did not reliably apply *any* principles or methodology to the facts of this case. *See* (Docket No. 196 at

9-10). Instead, he "simply relied on the assumptions and projections of MER and performed basic data entry." (Id. at 9).

By contrast to Travelers assertions, Mr. Carter testified that to estimate MER's lost profits he "looked at [MER's] profit margins and applied those as that's typically the best way to determine a reasonable profit margin versus the industry average." (Docket No. 196-3 at 2). In his report, he also explains that "[t]o determine total lost revenue, [he] utilized MER revenue models, discussions with counsel and MER personnel, and supporting documentation to determine anticipated revenue." (Docket 196-2 at 15). Mr. Carter applied a variable vs. fixed cost analysis in accordance with the Forensic & Valuation Services Practice Aid, "Calculating Lost Profits", published by the Association of International Certified Professional Accountants. (Id. at 16). In his report, Mr. Carter documented his process for calculating lost profits which relied on MER's financial models and other documentation provided by the Plaintiff. From these statements, the Court cannot conclude that Mr. Carter simply performed basic data entry, when, in fact, he appears to have conducted an analysis of MER's lost profits using accepted methods in his industry.

The First Circuit Court of Appeals has stated "[w]hen the factual underpinning of an expert's opinion is weak, it is a matter affecting the weight and credibility of the testimony-a question to be resolved by the jury." Int'l Adhesive Coating, Co. v. Bolton

16
**Civil. No. 18-1179 (GMM)**

Emerson Int'l, 851 F.2d 540, 545 (1st Cir. 1988) (*noting* that "the fact that an expert's opinion may be tentative or even speculative does not mean that the testimony must be excluded so long as opposing counsel has an opportunity to attack the expert's credibility."). Defendant will have the opportunity to assess the credibility of Mr. Carter's testimony in front of the jury through cross-examination. *See* Daubert, 509 U.S. at 596 ("vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

   ii.  Additional damages analysis

In arriving at his opinions on the available damages aside from lost profits, Mr. Carter claims to have reviewed financial documentation and, applying assumptions provided by former MER executives, Larry Khan and Akan Ismaili, calculated the total expenses in a variety of categories that could be attributable to Traveler's denial of MER claim for wreck removal for LONE STAR. See (Docket Nos. 196-2 at 5; 196-3 at 7,9,11,17). To demonstrate his analysis, Mr. Carter created charts which were included as exhibits to his report, documenting the expenses he states could be claimed as damages if a jury finds Travelers liable. *See* (Docket No. 196-2 35-58).

Travelers cites -within an exhibit to the Motion to Exclude Expert Carter- to statements regarding certain assumptions upon

which Mr. Carter's based his analysis of Book Hill's damages. Specifically, Mr. Carter states he was asked to assume that costs associated with wreck removal incurred by MER were caused by Travelers' refusal to fulfill its alleged obligation under the P&I Policy. *See* (Docket No. 296-3 at 9). Mr. Carter also acknowledges in his report, that "[a]s part of our analysis for certain costs, we relied on documentation produced by MER which did not contain additional support to verify certain expenses. However, based on our understanding of the events and discussions with counsel and MER personnel, we believe the amounts reflect costs incurred by MER to voluntarily clean up and monitor the LONE STAR." (Docket. No 296-2 at 14). When asked about this statement during his deposition, Mr. Carter confirmed that he did not believe supporting documentation for certain expenses existed and that he felt it was appropriate to rely on the information provided by management. *See* (Docket No. 296-3 at 9-10). The Court finds that the expert's reliance on conversations with MER executives regarding potentially reimbursable costs in addition to the financial documentation provided by the same is a sufficiently reliable basis upon which Mr. Carter could have formed his estimates of Book Hill's damages. Thus, the Court now must determine whether his opinions will help the trier of fact understand the issue of damages.

18
`Civil. No. 18-1179 (GMM)`

3. <u>Relevant to the Trier of Fact</u>

Travelers argues that Mr. Carter's opinions should be excluded because they will not assist the trier of fact to understand or determine the issues. *See* (Docket No. 196 at 10-12); Fed. R. Evid. 702. As to Lost Profits the Court cannot agree. Mr. Carter has engaged in an analysis of MER's lost profits using accepted methods in his industry that go beyond an exercise in simple arithmetic. *See* (Docket No. 196-3 at 2; 196-2 at 15-16). This analysis is not one the Court expects the jury to be able to engage in, thus, Mr. Carter's explanation as to his methods and the application of those methods to the facts of this case will likely help the jury understand Book Hill's claims to recover lost profit damages. *See* Fed. R. Evid. 702.

Conversely, the Court cannot say the same for Mr. Carter's opinions as to damages with respect to other expenses supposedly driven by Travelers' malfeasance. In response to Travelers argument that Mr. Carter is not qualified to opine on marine insurance and wreck removal, Book Hill admitted that "Mr. Carter's opinion[s] concern[] only the quantum of Book hill's damages . . ." (Docket No. 244 at 12); *see also* (<u>id.</u> at 13, 14, 15). By Book Hill's own admission, Mr. Carter's assessment of damages other than lost profits is an exercise in addition. Such an assessment can easily be conducted by a jury; to have an expert engage in simple arithmetic does nothing to help the jury understand the

19
**Civil. No. 18-1179 (GMM)**

issue as required under Fed. R. Evid. 702. *See* <u>United States v.</u>
<u>Navedo-Ramirez</u>, 781 F.3d 563, 568 (1st Cir. 2015) ("If a layperson
is capable of understanding an issue without the aid of an expert,
a district court may properly decline to admit expert testimony on
that issue on the ground that it would not be helpful to the
jury."). For this reason, the Court finds that Mr. Carter's
assessment of damages is an exercise that will not be helpful to
the jury because it will be capable of conducting the exercise on
its own.

   4. <u>Reliance On Out of Court Statements</u>

   Relatedly, Travelers argues that the Court should exclude Mr.
Carter's expert testimony because, in forming his opinions, Mr.
Carter "simply relied on what he was told and what he was given."
*See* (Docket No. 296 at 11). To support its request to exclude the
expert's opinions, Travelers cites various cases where Courts in
this Circuit evaluate "ventriloquist" experts under Fed. R. Evid.
703. These cases, however, do not provide a basis to exclude Mr.
Carter's testimony.

   Travelers relies on the First Circuit's opinion in <u>United</u>
<u>States v. Cormier</u>, 468 F.3d 63 (1st Cir. 2006), to argue that an
expert may not simply summarize out of court statements of others.
*See* (Docket No. 196 at 11). Some of the factors the First Circuit
considered were that the expert "consulted publicly available
records", "looked to conversations with manufacturers and research

20
**Civil. No. 18-1179 (GMM)**

texts", and "inspected one of the weapons." Id. at 73; (Docket No. 196 at 11). Travelers also cites to a recent District Court case in this Circuit, Collision Commc'ns, Inc. v. Nokia Sols. & Networks OY, 691 F.Supp.3d 360 (D.N.H. 2023), where the New Hampshire District Court denied the motion to exclude an expert's testimony based on a finding that the expert was not a "parrot" because he also considered other relevant documentation and "appl[ied] his experience in the field." Id. at 367. The Collision Court emphasized the difference between an "unreliable" report and one with weak factual footing: "[a]n unreliable opinion is based on the expert's *ipse dixit*, meaning the expert's unsupported assertions. An opinion with a weak or questionable factual footing is admissible because despite its arguable shortcomings it still has some factual footing." Id. at 368 (emphasis in original).

In the present case, as in Cormier and Collision, the expert's damages analysis does not merely "parrot" the Plaintiff's statements. Mr. Carter has relied on a substantial number of financial records and applied his experience to estimate MER's lost profits in connection to the sinking of the LONE STAR and later denial of insurance coverage by Defendant. The Court agrees with plaintiffs that MER's available financial records, contracts, and conversations with past executives "are of the type reasonably replied upon by financial experts." (Docket No. 244 at 19); *See*

*also* Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."). As such, the Court will not exclude Mr. Carter's expert testimony all together based on Fed. R. Evid. 703.

5. Unfair Prejudice

Finally, Defendant argues that Mr. Carter's expert report and testimony should be excluded under Fed. R. Evid. 403 because "to allow Carter to parrot MER's former management team's otherwise inadmissible statements and to provide a conduit for MER's untimely, unverified, and unsupported document dump to reach a jury would cause undue prejudice to Travelers." (Docket No. 196 at 12). The Court has already addressed Defendant's arguments as to the reliability of Mr. Carter's statements and agrees that simply providing the quantum of Book Hill's damages is not sufficiently probative to justify the risk that his opinion may unduly influence the jury in making its damages assessment. *See* United States v. Montas, 41 F.3d 775, 784 (1st Cir. 1994) ("Expert opinion on a subject that is well within the bounds of a jury's ordinary experience generally has little probative value. On the other hand, the risk of unfair prejudice is real. By appearing to put the expert's stamp of approval on the government's theory, such testimony might unduly influence the jury's own assessment of the inference that is being urged.").

22
**Civil. No. 18-1179 (GMM)**

Conversely, the Court has found Mr. Carter's lost profits analysis sufficiently reliable under Fed. R. Evid. 702 and cannot agree that the probative value of his opinions is so prejudicial to Travelers that it creates "a significant risk of the jury rendering a decision based on an improper basis." (Id.).

The Court will **GRANT** Travelers' Motion to Exclude Expert Carter with respect only to Mr. Carter's opinions on damages other than lost profits.

B. Motion to Exclude Expert Hostetter

In *Travelers' Motion In Limine to Exclude The Opinions Of Damon Hostetter* ("Motion to Exclude Expert Hostetter") and its accompanying *Memorandum*[17], Defendant requests the Court to exclude evidence and argument of various opinions offered by Book Hill's designated expert witness Damon Hostetter ("Mr. Hostetter") from trial. *See* (Docket Nos. 225; 226). Book Hill designated Mr. Hostetter as its expert in underwriting marine insurance claims. *See* (Docket No. 226-1 at 2). Travelers challenges the admissibility of several of the opinions offered by Mr. Hostetter because he is not qualified to offer them, they cannot assist the trier of fact, they do not rest on disclosed facts or reasons, and they are the product of "sharp and misleading practice by Book Hill's counsel." *See* (Docket No. 226 at 2).

---

[17] *Travelers' Memorandum In Support Of Its Motion In Limine to Exclude The Opinions Of Damon Hostetter* ("Memorandum in Support of Hostetter Motion").

**Civil. No. 18-1179 (GMM)**

1. <u>Qualifications</u>

Travelers makes a passing remark regarding Mr. Hostetter's qualifications, namely that "Hostetter has no experience in *commercial* marine insurance" and that his experience is almost exclusively limited to the "*recreational* marine industry." (<u>Id.</u> at 3) (emphasis in original). Travelers fails, however, to give an explanation why this distinction should disqualify Mr. Hostetter from providing expert opinion in this case. *See* (Docket No. 253 at 27-28). Despite Mr. Hostetter's experiences being focused on recreational, as opposed to commercial marine insurance underwriting, the Court acknowledges that his expertise in the marine insurance industry is extensive, with over 30 years "working directly in marine claims and underwriting" and additional experience testifying as an expert in the field. *See* (Docket Nos. 226-1 at 3; 226-9 at 2-3). The Court finds that Mr. Hostetter's "knowledge, skill, experience, training, or education" in the marine insurance industry, and specifically in marine insurance underwriting demonstrates that it is more likely than not that his testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Further, any "[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." § 6264.1 Bases for Qualifying an Expert, 29 Fed. Prac. & Proc. Evid. § 6264.1 (2d ed.).

24
**Civil. No. 18-1179 (GMM)**

2. <u>Inadmissible Legal Conclusions</u>

Travelers asks the Court to exclude nine separate "legal conclusions" in Mr. Hostetter's expert report which it argues "improperly invade the province of the judge and jury." (Docket No. 226 at 4). An expert's testimony is considered unhelpful to the trier of fact when an expert opines on a "pure question of law." <u>Nieves-Villanueva v. Soto-Rivera,</u> 33 F.3d 92, 99 (1st Cir. 1997). The Federal Rules of Evidence allow an expert witness "to offer his or her factual conclusion in order to aid the jury, which properly can choose to accept or reject it[,]" however, "it is for the judge, not the lawyers or the witnesses, to inform the jury of the law applicable in the case and to decide any purely legal issue." <u>Id.</u> at 100. The First Circuit acknowledged in the <u>Nieves</u> decision "what is law and what is application or practice may be difficult to ascertain." <u>Id.</u> When an expert witness purports to "draw ultimate legal conclusions" then their testimony cannot be considered to "properly assist the terrier of fact" because the testimony has "invad[ed] the province of the jury." <u>Carballo Rodriguez v. Clark Equip. Co.,</u> 147 F.Supp.2d 81, 85 (D.P.R. 2001).

Here, Travelers argues that in making the following nine statements Mr. Hostetter has "stepped well outside his role of assist the jury in understanding the evidence or determining a fact at issue. We address each in turn.

25
**Civil. No. 18-1179 (GMM)**

> *(1)  A policy is not marine if there is no vessel in navigation at the time the policy is bound.*

Book Hill concedes that the Court has already determined in its *Opinion and Order* at Docket No. 162 that the insurance policies are governed by maritime law, thus Mr. Hostetter will not advise the jury on that topic. *See* (Docket No. 244 at 51).

> *(2)  It is doubtful that marine insurance principals [sic] are appropriate when considering the matter of the sinking of the "Lone Star" a former Cal Dive pipe laying/dive support barge owned by MER.*

Book Hill draws a distinction between maritime law –which the court already ruled applies to this dispute– and "marine insurance principals [sic]", the application of which Plaintiff argues "will undoubtedly assist the trier of fact." (Id. at 52). Book hill gives the example of "seaworthiness and how Travelers should have considered Seaworthiness in the adjusting of the claim" as issues on which Mr. Hostetter is qualified to opine and will assist the jury in its factual determinations. (Id.). The Court agrees that the application of the facts to general principles of marine insurance claims, such as an evaluation of seaworthiness, is an appropriate function for Book Hill's marine insurance underwriting expert to opine on.

> *(3)  That all of the above is the type of carrier behavior covered by the Puerto Rico "dolo" statute with respect to Traveler's [sic] handling of the LONESTAR [sic] Canoe claim and the MER policies generally.*

26
**Civil. No. 18-1179 (GMM)**

Book Hill argues that this statement is "not merely a statement of a legal conclusion" but an opinion on the "ultimate issue" of whether Travelers' actions constituted bad faith as permitted by Fed. R. Evid. 704(a). (Docket No. 244 at 52). In response, Travelers argues that an expert's opinion on whether Travelers acted in bad faith is a similarly excludable legal conclusion. *See* (Docket No. 253 at 29). "Rule 704 permits expert testimony that tackles the ultimate issue of a case. . .The ultimate issue that Rule 704 refers to, does not, however permit expert testimony that proffers legal conclusions." <u>Cotto-Vazquez v. United States</u>, No. CV 16-2807 (SCC), 2021 WL 965825 at *27 (D.P.R. Mar. 11, 2021) (*citing* Fed. R. Evid. 704; and <u>Nieves-Villanueva</u>, 133 F.3d at 99-100). Expert testimony that includes the expert's opinion on whether the Defendant's actions are cognizable under the Puerto Rico "dolo" statue is certainly an impermissible legal conclusion. Equally impermissible as a legal conclusion is testimony from the expert that concludes the Defendant acted in bad faith. Such testimony will be excluded from trial. This does not prevent Book Hill's underwriting expert to opine on Traveler's actions compared to industry standards or any other opinion that does not invade the province of the jury to make ultimate factual determinations or the court's role in stating applicable law.

27
**Civil. No. 18-1179 (GMM)**

> *(4)   [T]he doctrine of uberrimae fidei after commencement*
> *of the policy does not require that an insured notify*
> *an insurer every time there is an incident that might*
> *affect the seaworthiness of the vessel, if the vessel*
> *owner subjectively believed the vessel was seaworthy.*

Book Hill argues that Mr. Hostetter's opinion in this regard will assist the trier of fact in determining "whether MER disclosed 'all material facts of which the insured has, or ought to have, knowledge'". (Docket No. 244 at 53). The Court disagrees and interprets this statement as an impermissible statement of the applicable law by the expert and will be excluded from Mr. Hostetter's trial testimony.

> *(5)   I do not believe that any attempt to deflect blame to*
> *AJ Gallagher absolves Travelers, particularly of the*
> *dolo violations.*

This statement is impermissible for the same reason as statement (3) is impermissible; Mr. Hostetter's opinions about the applicability of the Puerto Rico "dolo" statute are legal conclusions that invade the province of the Court and shall be excluded.

The following statements cited by Travelers shall not be excluded as they are not impermissible statements of law but are expert opinions on issues of fact that will likely aid the jury in understanding the evidence and determining facts at issue. *See* Fed. R. Evid. 702.

> *(6)   [I]t is my opinion it would be inappropriate to deny*
> *the claim under the concept of uberrimae fidei.*

28
**Civil. No. 18-1179 (GMM)**

> *(7)   That MER and Travelers agreed upon voluntary wreck removal cover and under the facts of the LONESTAR [sic] Canoe claim that coverage should have been paid to MER entities in a timely fashion.*

> *(8)   That MER and Travelers also agreed upon compulsory wreck removal and under the facts of the LONESTAR [sic] Canoe claim that cover was also triggered and should have been paid.*

> *(9)   [T]hat there was not a lack of due diligence on the part of MER entities with respect to the canoe of the LONESTAR [sic].*

As such, Mr. Hostetter will be prohibited from framing his expert opinions as legal conclusions as demonstrated in above statements (2), (3), (4), and (5).

3. <u>Failure to Disclose Reason or Basis for Opinions</u>

In the Motion to Exclude Expert Hostetter, Travelers also asks the court to exclude from trial the following two statements made in Mr. Hostetter's Rebuttal Report:

> *(1)   DeSimone's assertion that MER lacked security and therefore misstated the status of the security as a basis to avoid the policy is without merit. The same can be said of the rebuttal related to the due diligence of the insured, MER.*

(Docket 226-3 at 3).

> *(2)   In good faith MER provided all the information known, or believed to be true, regarding their business, operation, and insurance requirements to AJG. . .*

(Docket No. 262-2 at 2).

Travelers correctly states that Rule 26 of the Federal Rules of Civil Procedure requires expert reports contain "a complete

statement of all opinions the witness will express and the basis and reasons for them[,]" as well as "the facts or data considered by the witness in forming them[.]" Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). Additionally, per Federal Rule of Civil Procedure Rule 37, when a party fails to disclose information required by Rule 26(a), the party "is not allowed to use that information or witness to supply evidence…at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Travelers argues that Mr. Hostetter's purportedly unsupported statements are not substantially justified or harmless because without knowing the basis and reasoning for these statements, Travelers "cannot adequately prepare for trial." (Docket No. 226 at 7). In its Omnibus Opposition, Book Hill asserts that these statements in Mr. Hostetter's supplemental report are based on the same evidence as his initial report, namely "[his] education, knowledge, experience, training" and his "review of the case related materials described below, information described herein, and [his] reasoning provided in [his] reports." (Docket No. 244 at 58-59; Docket No. 226-2 at 2). Book Hill further rebuts Travelers' argument that it lacks sufficient information to prepare for trial because Travelers had the benefit of deposing Mr. Hostetter one week after the filing of his rebuttal report. *See* (Docket No. 244 at 59). The Court agrees that the opportunity to depose Book Hill's expert reduces the risk of harm to Travelers with respect to their

30
**Civil. No. 18-1179 (GMM)**

ability to prepare for trial. Furthermore, Travelers will have an additional opportunity to test the credibility of Mr. Hostetter's expert opinions before the jury and interrogate the underpinnings of those opinions. *See* <u>Martínez v. United States</u>, 33 F.4th 20, 24 (1st Cir. 2022) ("That 'the factual underpinning of an expert's opinion is weak' is 'a matter affecting the weight and credibility of the testimony -- a question to be resolved by the jury.'" *quoting* <u>Milward v. Acuity Specialty Prods. Grp., Inc.</u>, 639 F.3d 11, 22 (1st Cir. 2011)). As such, at this time, the Court does not find it necessary to strike the statements from use at trial.

    4. <u>Gamesmanship</u>

    Finally, Travelers alleges that counsel for Book Hill "laid in wait" to notify of Mr. Hostetter's availability for deposition before submitting his rebuttal report "11 minutes before the close of discovery," and thus Book Hill "engaged in just the sort of gamesmanship the disclosure rules [of civil procedure] were designed to eliminate." (Docket No. 226 at 7). For this alleged wrongdoing, Travelers asks the Court to exercise its discretion and exclude Mr. Hostetter "from offering any opinions contained in his last-minute midnight rebuttal report[.]" (<u>Id.</u>). Book Hill denies engaging in "gamesmanship" and argues that excluding expert testimony would be extreme given that Travelers' expert's report, which Mr. Hostetter was tasked with rebutting, was also provided on the final day of expert discovery, and Travelers had the

31
**Civil. No. 18-1179 (GMM)**

opportunity to depose Mr. Hostetter after receiving his rebuttal report. *See* (Docket No. 244 at 56). The Court agrees with Book Hill and will not exclude Mr. Hostetter's testimony on these grounds.

## IV.   CONCLUSION

For the foregoing reasons:

*Travelers Property Casualty Company of America's Motion In Limine To Exclude Opinions Of Robert William Carter* at Docket No. 195 is **GRANTED IN PART**; and

*Travelers' Motion In Limine To Exclude The Opinions Of Damon Hostetter* at Docket No. 225 is **GRANTED IN PART**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, December 4, 2024.


s/ Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
United States District Judge